LAW FIRM OF
OMAR T. MOHAMMEDI, LLC

233 BROADWAY, SUITE 801
WOOLWORTH BUILDING
NEW YORK, NY 10279
PHONE (212) 725-3846
FACSIMILE (212) 202-7621
WWW.OTMLAW.COM

OMAR T. MOHAMMEDI, ESQ.
DIRECT DIAL: (212) 725-3846 x102
EMAIL: OMOHAMMEDI@OTMLAW.COM

ADMITTED: NEW YORK, EIGHTH CIRCUIT
SECOND CIRCUIT, EASTERN & SOUTHERN
DISTRICT OF NEW YORK
US COURT ON INTERNATIONAL TRADE

June 2, 2017

**VIA ECF**
The Hon. Vernon S. Broderick, U.S.D.J.
United States District Court, Southern District of New York
40 Foley Square, Room 518
New York, NY 10007

> Re:  Connell Lewis, et al v. SARAR USA, Inc., et al.
>      Docket No. : 17-CV-02181 (VSB)

Dear Judge Broderick:

Pursuant to Defendant's letter filed with this Court on May 6, 2017 (ECF No. 14) and as per this Court's order during the pre-motion conference held on May 24, 2017, Defendant SARAR USA respectfully submits this letter seeking a protective order barring Plaintiffs' Counsel from communicating with putative collective and class members.

## FACTUAL BACKGROUND

On March 26, 2017, Plaintiffs Connell Lewis, Amber Werst, and Susan Capps, former employees of SARAR USA, Inc., commenced this action by filing a Complaint (ECF No. 1) against Defendant. The Complaint alleges that Defendant violated the Fair Labor Standards Act and the New York Labor Law by misclassifying its store managers as exempt from overtime and by failing to pay overtime to store managers and non-exempt employees, among other claims. Plaintiffs alleged an opt-in nationwide collective action on their FLSA claims on behalf of all similarly situated current and former employees of Defendant and alleged an opt-out New York class of similarly situated current and former employees under Fed. R. Civ. P. 23.

To date, the issue is not ripe for Plaintiffs to file a motion to certify a class or proceed conditionally as a collective or class action under the FLSA or NYLL. In addition, no court order allows Plaintiffs' attorneys to send any notice or other communications to putative members. Nevertheless, on or before March 26, 2017, Plaintiffs' Counsel took it upon themselves to begin a problematic and damaging campaign of contacting SARAR employees via online LinkedIn messages and possibly other forms of communications. They solicited SARAR's present employees to become party plaintiffs in this action. As shown in Exhibits A, B, and C to this letter, Plaintiffs' attorneys have been attempting to communicate directly with employees of SARAR USA, Inc. The attached messages are print-outs of emails of which we are aware of direct, real-time LinkedIn messages that employees received from Plaintiffs' Counsel. They are

likely only a small sampling of similar such messages sent to current and former employees of SARAR. These communications are causing harm to SARAR. They are one-sided, incomplete, confusing to a layperson, and premature in the current litigation. As a result, they are prejudicial to the daily operations of Defendant's business, its relationship to its employees, and to this litigation. Such contact, before the Court decides the pending Motion to Dismiss, before a collective is conditionally certified, and before the notice period is open, is highly inappropriate. These direct messages are a flagrant attempt by Plaintiffs' Counsel to solicit participation in this lawsuit without this Court's knowledge or permission. In fact, their actions are a brazen violation of the Supreme Court's guidance that this Court should oversee any notice process.

## LEGAL ARGUMENT

In *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99–100, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981), the United States Supreme Court recognized that opportunities for abuse exist with unsupervised communication with potential class members. According to the Supreme Court, district courts have "both the duty and the broad authority" to govern the conduct of counsel and parties in class actions brought under Fed. R. Civ. P. 23 and collective actions brought under the FLSA. *Gulf Oil Co.*, 452 U.S. at 99–100 (recognizing district courts' authority to govern communications between parties and class members because of "opportunities for abuse" that exist in class actions); *see also Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170–71, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989) (holding that district courts should oversee the notice process and should exercise their discretion to authorize and facilitate notice of the collective or class action); *Brown v. Mustang Sally's Spirits & Grill, Inc.*, No. 12-CV-529S, 2012 WL 4764585, at *2 (W.D.N.Y. Oct. 5, 2012) ("Courts have the authority in both Fed. R. Civ. P. 23 class actions and FLSA collective actions (29 U.S.C.A. § 216(b) (West)) to enter appropriate orders governing the conduct of counsel and parties."). In exercising this authority, district courts can limit communications by plaintiffs, defendants, or both. *Zamboni v. Pepe W. 48th St. LLC*, No. 12 CIV. 3157 AJN JCF, 2013 WL 978935, at *2 (S.D.N.Y. Mar. 12, 2013). The supervisory authority of courts to oversee notice to putatives exists even before a class is certified. *In re Initial Pub. Offering Sec. Litig.*, 499 F. Supp. 2d 415, 418 n. 13 (S.D.N.Y. 2007).

These holdings were adopted into Southern District law in *Agerbrink v. Model Serv. LLC*, No. 14 CIV. 7841 JPO JCF, 2015 WL 6473005, at *3 (S.D.N.Y. Oct. 27, 2015). The *Agerbrink* Court found that "the need for a district court to ensure that all parties act fairly is especially great during the early stages of FLSA litigation." The Court stated that "because formal notice to potential plaintiffs is sent only after conditional certification, 'pre-certification, *ex parte* communication with putative FLSA collective members about the case has an inherent risk of prejudice and opportunities for impropriety.'" (quoting *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 921 (11th Cir. 2014)). "Because FLSA plaintiffs must opt-in, unsupervised, unilateral communications with those potential plaintiffs can sabotage the goal of the FLSA's informed consent requirement by planting the slightest seed of doubt or worry through the one-sided, unrebutted presentation of 'facts.'" *Billingsley*, 560 F. App'x at 924.

LAW FIRM OF
**OMAR T. MOHAMMEDI, LLC**

Despite the authority of courts to limit communications by attorneys to potential plaintiffs, Plaintiffs' Counsel may argue that barring pre-certification communications would be a prior restraint on their First Amendment rights, relying on *Gulf Oil*. Plaintiffs' counsel may have "a First Amendment right to constitutionally protected commercial speech in its advertisement to a putative, but it is not absolute." *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 163 (N.D.N.Y. 2008). The court in *Brown*, 2012 WL 4764585, ruled that a district court "must not interfere with any party's ability to communicate freely with putative class members, unless there is a specific reason to believe that such interference is necessary." However, when there is a "clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties," courts can, and do, issue restraints on communications with a putative class. *Ruggles*, 591 F. Supp. 2d at 164.

*Gulf Oil* can be easily distinguished from the case at bar. The Supreme Court in *Gulf Oil* found that plaintiffs in that case were merely "inform[ing] potential class members of the existence of the lawsuit" and that, simultaneously, defendants were attempting to secure releases from putative members in exchange for payment. These facts justified the court's decision not to bar plaintiffs' communications. Additionally, in *Gulf Oil*, the district court did not look at the clear record or make specific findings of fact in rendering its decision. In *Rossini v. Ogilvy & Mather, Inc.*, an order was issued limiting Plaintiffs' communications with prospective class members and requiring court approval of oral and written communications between the parties and potential members of the class. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986). The authority for that order was derived from the Manual for Complex Litigation, *cf.* Manual for Complex Litigation Second § 30.24 (1985), *reprinted in* 1 J. Moore, Moore's Federal Practice Part 2 (2d ed. 1986) and *Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l, Inc.*, 455 F.2d 770 (2d Cir. 1972). *Id*. The Second Circuit found that such an order did not run afoul of *Gulf Oil*. As seen above, the Second Circuit has not allowed the *Gulf Oil* decision to immunize plaintiffs' counsel against sanctions or other protective measures should they engage in improper communications with potential class members. Based on the foregoing, *Gulf Oil* is clearly inapposite to the facts in the present litigation.

The Southern District, in interpreting *Gulf Oil,* also found that "a court must take steps to further the policies embodied in Rule 23. One policy of Rule 23 is the protection of class members from 'misleading communications from the parties or their counsel.'" *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005) (quoting *Erhardt v. Prudential Grp., Inc.*, 629 F.2d 843, 846 (2d Cir. 1980)). The Court found that this "same policy concern applies where a party misleads class members by omitting critical information from its communications." This is exactly what Plaintiffs' counsel are attempting to do when they sent misleading email messages to SARAR managers and possibly other employees.

The Southern District has established that judicial intervention is warranted when communications pose "a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally." *Brown*, 2012 WL 4764585, at *3 (quoting *In re Sch. Asbestos Litig.*, 842 F.2d 671, 680 (3d Cir. 1988)). A district court may prevent confusion and unfairness by prohibiting and correcting communication that is inaccurate,

3

unbalanced, misleading, or coercive. *See Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 485 (S.D.N.Y. 2012). The decisions in *Brown* and *Urtubia* attempt to prevent the type of confusing, misleading, and unbalanced communications Plaintiffs' counsel are engaged in here.

When determining if pre-certification communications are misleading, the *Agerbrink* court cited to *Camp v. Alexander*, 300 F.R.D. 617, 624 (N.D. Cal. 2014), which found that a defendant's communication was "entirely one-sided, omitting relevant information regarding Plaintiffs' claims and failing to provide contact information for Plaintiffs' counsel". In deciding to limit Plaintiffs' communications with putative collective or class members, the Southern District also relied upon *Georgine v. Amchem Prod., Inc.*, 160 F.R.D. 478, 496 (E.D. Pa. 1995) ("The one-sided attacks[ ] and the failure to discuss...the drafters' interests...when considered in conjunction with the misleading statements and omissions...lead to the inescapable conclusion that class members who were exposed to these communications could not make an informed choice of whether to remain in the class or to opt out."). This same analysis can apply to Plaintiffs' direct LinkedIn messages.

Plaintiffs' Counsel's communications here are misleading for several reasons. Firstly, one of the messages (Exhibit A) states that Plaintiffs' Counsel represent "non-exempt employees." The non-exempt status of the Plaintiffs here is purely an allegation, and a legal determination must be made in the course of this litigation as to its merit. Plaintiffs' Counsel state allegations in their messages as if they were statements of law, not subject to interpretation or factual finding. *Agerbrink*, 2015 WL 6473005, at *6. That Plaintiffs may be "non-exempt" is not a fact that Plaintiffs' Counsel can represent to putative members as the truth. Because many sales associates may fall under FLSA 7(i) inside sales exemption, it is misleading for Plaintiffs to represent that their Plaintiffs are non-exempt. Additionally, Plaintiffs fail to address in any of the emails the length and breadth of a class action litigation generally, which would be an important factor for putative employees in considering whether to join the collective or not. Instead, the messages make it seem that the recipients would easily be able to recover if they were to opt-in. Also, the messages do not represent to the recipients that they are free to pursue other counsel or to not bring a claim at all. Finally, none of the messages mention Defendant's perspective in any way, which is critical to potential class and collective members being fully informed.

Plaintiffs' communications in this case are one-sided. They offer no true guidance to those who may join the class or collective as to the nature of the action or the challenges they would face should they opt in but rather seek only to recruit a client. The lack of balanced information means that those receiving the communication could not make an informed choice. The messages to putative collective/class members lack objectivity and neutrality and present only the lure of a monetary settlement without explaining the obligations of individuals who join such actions. They do not set forth clearly that employees can simply choose not to join the litigation or may seek other plaintiff's counsel. Moreover, Plaintiffs have hurt SARAR's relationship with and standing among its employees by implying that they have been treated unlawfully or unfairly with respect to their compensation. This is harm the Defendant cannot easily repair. Thus, by sending these incorrect solicitation messages, Plaintiffs have disseminated

LAW FIRM OF
**OMAR T. MOHAMMEDI, LLC**

confusing, misleading, and harmful information, and have clearly and adversely affected the administration of justice.

Intervention of this Court is necessary here to prevent Plaintiffs' Counsel misleading communications that cause confusion and a serious threat to the fairness of the litigation process. Moreover, the communications are causing irreparable harm to SARAR's reputation and to its relationship with its employees. Such communications often threaten the fairness of the litigation process and the administration of justice if they are not properly managed by the courts. *See Erhardt*, 629 F.2d at 846 ("[u]napproved notice to class members which are factually or legally incomplete, lack objectivity and neutrality...[and] will surely result in confusion and adversely affect the administration of justice.")

At present, this case is solely an action brought by three plaintiffs. Plaintiffs have only alleged in their Complaint that the present litigation should be a putative collective and class action under FLSA and NYLL. Plaintiffs have unilaterally decided that similarly situated employees exist, that notice should be sent, that they get to control the substance of these notices, and that the Court and Defense Counsel need not participate in or even be informed of this most crucial of processes. They are essentially soliciting parties to this action with impunity. By so doing, Plaintiffs have usurped the power of the Court to control the matters before it and simply decided they were free to solicit individuals. This was done without meeting the minimum threshold showing that is required for the Court to permit notices to be sent and before the Court has even defined the scope of the action. Defendant believes and indeed has proof that the individual Plaintiffs themselves do not have sustainable claims and, as such, cannot establish that they are similarly situated to potential plaintiffs. Given the meritless nature of Plaintiffs' claims, particularly regarding the classification of employees as exempt from overtime or the payment of minimum wages, there is a very real possibility that this Court will not conditionally certify a class or collective, making Plaintiffs' unilateral actions particularly egregious and prejudicial to this litigation.

A protective order here will prevent further injury to Defendant and abuse of the court's processes. *Wiwa v. Royal Dutch Petroleum Co.*, No. 96 CIV 8386 KMWHBP, 2006 WL 2724024 (S.D.N.Y. Sept. 22, 2006). Plaintiffs have abused the process which courts have set up to monitor the notice process in FLSA and NYLL actions. Plaintiffs' Counsel has caused significant harm to Defendant. As such, Defendant respectfully requests that the Court enter an order: barring Plaintiffs from further soliciting members of the putative FLSA collective and the putative NYLL class; requiring Plaintiffs to disclose any solicitation they have sent and any communications or documents they have received pursuant to these solicitations; and granting any other remedies the Court deems just and proper.

                                                             Sincerely,

                                                             */s/ Omar T. Mohammedi*
                                                             Omar T. Mohammedi, Esq.

CC: Plaintiffs' Counsel via ECF