UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                                        :
AMBER WERST, CONNELL LEWIS,                              :
SUSAN CAPPS, AND ROHAN BAILEY, *on*                     :
*behalf of themselves and all others similarly-*        :
*situated*,                                              :
                                                        :        17-CV-2181 (VSB)
                                     Plaintiffs,        :
                                                        :        **OPINION & ORDER**
                                                        :
               - against -                              :
                                                        :
SARAR USA INC., SARAR GROUP,                            :
TUFAN AKSAHIN, *in his professional and*                :
*individual capacities*, BULENT                         :
KURTYILMAZ, *in his professional and*                   :
*individual capacities*, and JOHN                       :
DOE AND JANE DOE #1-10,                                 :
                                                        :
                                     Defendants.        :
                                                        :
--------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___3/16/2018___

Appearances:

Justin R. Marino
J.R. Stevenson
Stevenson Marino LLP
New York, New York
*Counsel for Plaintiffs*

Omar T. Mohammedi
Aparna Anantharaman
Law Firm of Omar T. Mohammedi, LLC
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

        Plaintiffs Amber Werst, Connell Lewis, Susan Caps, and Rohan Bailey, on behalf of

themselves and other employees similarly situated, bring this action for alleged violations of the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Claims I, V, & VIII), the New

York Labor Law ("NYLL") (Claims II, III, & IV), the Equal Pay Act of 1963 ("Equal Pay Act")

(Count VI), and the District of Columbia Human Rights Act of 1977 (Count VII).  Before me is the motion of Defendants Sarar USA, Inc. ("Sarar"), Tufan Aksahin, and Bulent Kurtyilmaz (collectively, "Defendants") to dismiss certain claims alleged in Plaintiffs' Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and insufficient service of process under Federal Rule of Civil Procedure 12(b)(5).  (Doc. 44.)  Because I find that the Amended Complaint contains sufficient allegations to (1) establish personal jurisdiction and service of process over Defendants Aksahin and Kurtyilmaz, (2) state overtime claims under the FLSA and NYLL, and (3) state gap-time claims under the NYLL, Defendants' motion to dismiss these claims is DENIED.  However, the allegations in the Amended Complaint do not plausibly allege a claim under the Equal Pay Act; therefore, Defendants' motion to dismiss that claim is GRANTED.

## I.    **Background**[1]

Plaintiffs allege a systemic practice of Defendants failing to pay their employees overtime compensation, properly record employees' time, and provide employees with required lunch breaks.  (*See, e.g.*, Am. Compl. ¶¶ 14–15, 18–19, 52, 82, 147, 205, 208.)[2]  The Amended Complaint alleges that Plaintiffs were employed by Defendants at Sarar locations across the United States, including one location in New York City.  (*See id.* ¶¶ 16–22, 27–40.)  Sarar is a corporation registered with the New York State Department of State, with its principal place of business in New Jersey.  (*Id.* ¶ 41.)  Defendants, including Aksahin and Kurtyilmaz (the

---

[1] The following factual summary is drawn from the allegations of the Amended Complaint, which I assume to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to the Amended Complaint filed in this action on June 23, 2017.  (Doc. 32.)

"Individual Defendants"), maintain control, oversight, and discretion over the operation of Sarar retail stores, including Sarar's employment practices with respect to Plaintiffs. (*Id.* ¶ 80.) Aksahin was the Chief Executive Officer and/or the Executive Vice President of Sarar, (*id.* ¶ 42), and Kurtyilmaz was and is the Operations Manager and/or Chief Executive Officer and/or one of the ten largest shareholders of Sarar, (*id.* ¶ 43).

## II.   <u>Procedural History</u>

Plaintiffs Connell Lewis, Amber Werst, and Susan Capps, on behalf of themselves and all others similarly situated, commenced this action on March 26, 2017 with the filing of a complaint. (Doc. 1.) Since the initial filing of the complaint, Justin Swan, Rohan Bailey, Patrick Silas, Aremu Rasaq, and Evrim Aznabay have consented to opt-in as plaintiffs under the FLSA. (Docs. 2, 7, 13, 24, 48.)

On May 4, 2017, Plaintiffs filed a letter requesting: (1) a waiver of the pre-motion conference requirement under my Individual Rules and permission to immediately file a motion seeking judicial notice of the collectives; or, in the alternative (2) a pre-motion conference so that Plaintiffs could immediately move for judicial notice of the collectives; or, in the alternative (3) that I order the statute of limitations be tolled on June 1, 2017. (Doc. 11.) In response, Defendants did not object to a pre-motion conference, but opposed waiving the pre-motion conference requirement as well as the tolling of the statute of limitations. (Doc. 14.) Defendants also advised of their intent to move for an injunction restraining Plaintiffs' counsel from contacting Defendants' employees and to file a partial motion to dismiss.

On May 8, 2017, I directed the parties to appear for a conference on May 24, 2017 to discuss their proposed motions. (Doc. 15.) At the conference, I permitted Defendants to file their proposed partial motion to dismiss. As part of the briefing for that motion, I directed the

parties to each include a section devoted to whether equitable tolling was appropriate under the circumstances.

Separately, I directed the parties to submit letters in support of their positions on an injunction restraining Plaintiffs' counsel from contacting Defendants' employees. On June 6, 2017, after considering the parties' submissions, I declined to restrict Plaintiffs' counsel's communications with potential opt-in Plaintiffs, denying with leave to renew Defendants' motion for an injunction. (Doc. 25.)

On June 23, 2017, Plaintiffs filed the Amended Complaint. (Doc. 36.) On June 26, 2017, I denied Defendants' pending partial motion to dismiss, (Doc. 16), as moot with leave to re-file, (Doc. 39). On July 20, 2017, Defendants re-filed their partial motion to dismiss the Amended Complaint. (Docs. 44–45.) On August 3, 2017, Plaintiffs filed their opposition to Defendants' partial motion to dismiss. (Doc. 27.) On August 17, 2017, Defendants filed their reply in further support of their partial motion to dismiss. (Doc. 49.)

### III. <u>Legal Standard</u>

#### A. *Rules 12(b)(2) and 12(b)(5)*

Lack of personal jurisdiction and inadequate service of process provide two independent bases for dismissal, *see* Fed. R. Civ. P. 12(b)(2), (5); however, under certain circumstances, the two bases overlap. When a defendant moves for dismissal for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999). Likewise, when a defendant moves for dismissal for inadequate service of process pursuant to Rule 12(b)(5), the plaintiff "bears the burden of establishing that service was sufficient." *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (summary order) (citing *Burda*

*Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005)).  In considering motions to dismiss pursuant to Rules 12(b)(2) and 12(b)(5), the court may look beyond the pleadings, including to affidavits and supporting materials, to determine whether it has jurisdiction and service was proper.  *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).

### B. *Rule 12(b)(6)*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Plausibility . . . depends on a host of considerations:  the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor.  *Kassner*, 496 F.3d at 237.  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Id.*

## IV.    Discussion

Defendants move to dismiss the following claims:  (1) Plaintiffs' claims arising under the FLSA for failure to state a claim (Claims I, V, & VIII); (2) Plaintiffs' claims arising under the NYLL for failure to state a claim (Claims II, III, & IV); (3) Plaintiff Werst's claims under the Equal Pay Act for failure to state a claim (Claim VI); (4) all claims against the Individual Defendants for lack of personal jurisdiction; and (5) all claims against the Individual Defendants for insufficient process.  Defendants also request that I deny any equitable tolling of the statute of limitations.

### A.    *Personal Jurisdiction*

#### 1.  Applicable Law

A plaintiff bears the burden of showing that the court has personal jurisdiction over each defendant.  *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction."  *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003).  Furthermore, the court will credit "a plaintiff's averments of jurisdictional facts as true."  *Id.*  The court "will not draw 'argumentative inferences' in the plaintiff's favor." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)).

In a federal question case, "personal jurisdiction in federal court is determined by the laws of the forum state."  *Machkour v. Espices W. 70th Corp.*, No. 11-CV-688 (JPO), 2011 WL 6288006, at *3 (S.D.N.Y. Dec. 14, 2011) (citing *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997)).  New York's long-arm statute, New York Civil Practice Law and Rules ("C.P.L.R") § 302(a), allows a court to exercise specific personal jurisdiction over a non-

domiciliary if that party "'transacts any business within the state' and if the claim arises from these business contacts." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006) (quoting N.Y. C.P.L.R. § 302(a)). To determine whether an out-of-state party "transacted business" in New York, "courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." *Id.* at 105 (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999)). To meet the "arising out of" requirement, "there must be a substantial nexus between the transaction of business and the claim." *Id.* (internal quotation marks omitted).

If the court finds jurisdiction under C.P.L.R. § 302(a), "it must next determine whether such an exercise of jurisdiction comports with due process." *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998); *see also D.H. Blair*, 462 F.3d at 104 (stating that C.P.L.R. § 302 establishes personal jurisdiction over non-domiciliaries "so long as the district court's exercise of jurisdiction comports with the requirements of due process"). To comport with due process, a defendant must have "'minimum contacts' with the forum state such that the maintenance of the action does not offend 'traditional notions of fair play and substantial justice.'" *Karabu Corp.*, 16 F. Supp. 2d at 323 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In other words, "[t]he defendant's activity in the state should be such that it would be fair and reasonable to require him to defend himself in that state." *Id.*

### 2. Application

Defendants argue that Plaintiffs' claims against the Individual Defendants must be dismissed for lack of personal jurisdiction because both Aksahin and Kurtyilmaz lack sufficient

contacts with New York to permit the exercise of jurisdiction. (Defs.' Mem. 21–26.)[3]  As discussed below, the Amended Complaint contains sufficient allegations related to Aksahin and Kurtyilmaz's contacts with Sarar's operations in New York to establish specific personal jurisdiction over each of the Individual Defendants.

Plaintiffs allege that Defendants, including Aksahin and Kurtyilmaz, maintain control, oversight, and discretion over the operation of Sarar's retail stores, including their employment practices with respect to Plaintiffs. (Am. Compl. ¶ 80.)  Plaintiffs allege that Aksahin was the Chief Executive Officer and/or the Executive Vice President of Sarar, (*id.* ¶ 42)—a New York corporation, (*id.* ¶ 41)—and that Kurtyilmaz was and is the Operations Manager and/or Chief Executive Officer and/or one of the ten largest shareholders of Sarar, (*id.* ¶ 43).  In those capacities, the Individual Defendants allegedly oversaw the day-to-day operations of Sarar, made supervisory and managerial decisions for the corporation, and had the power to, and did in fact, hire and fire employees, including Plaintiffs, one of whom was employed in New York. (*See id.* ¶¶ 42–43.)  Aksahin, for example, regularly reviewed each store's security cameras throughout his employment, (*id.* ¶ 85), which included Sarar's stores in New York, (*see id.* ¶ 32).

Defendants argue that "Plaintiffs fabricate facts based on speculation," and that these "frivolous allegations" are without any basis. (Defs.' Reply 8.)[4]  For example, Defendants contend that Kurtyilmaz committed no acts for the company, within or outside of New York, prior to becoming CEO of Sarar in March 2017. (Defs.' Mem. 23.)  These facts, however, are not alleged in the Amended Complaint or otherwise in the record before me, and are not properly

---

[3] "Defs.' Mem." refers to Defendants' Memorandum of Law in Support of Partial Motion to Dismiss and to Deny Tolling of the Statute of Limitations. (Doc. 45.)

[4] "Defs.' Reply" refers to Defendants' Memorandum of Law in Reply to Plaintiff's Opposition to and in Further Support of Partial Motion to Dismiss and to Deny Tolling of the Statute of Limitations. (Doc. 49.)

before me.  Although I may rely on materials beyond the pleadings in considering a 12(b)(2)

motion, Defendants have not presented any affidavits or supporting materials in support of their

motion.  *See Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 225 (S.D.N.Y. 2013) ("[T]he Court

may also rely on submitted affidavits and other supporting materials submitted in relation to the

motion.").  Defendants have not provided me with a "controverting presentation" through

anything other than argument, and even if they had, I must construe the Amended Complaint in

Plaintiffs' favor.  *Id.* at 225 ("In the absence of an evidentiary hearing or a trial on the merits, all

pleadings and affidavits are 'construed in the light most favorable to the plaintiff and doubts are

resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving

party.'" (quoting *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993))).

Accordingly, Plaintiffs have sufficiently alleged that the Individual Defendants transacted

business in New York, and that their claims against the Individual Defendants arise, at least in

part, out of their business in New York (*e.g.*, their control over employment practices with

respect to Plaintiffs, including the firing and hiring of employees).  *See Machkour*, 2011 WL

6288006, at *3–4 (holding that plaintiffs established a prima facie showing of jurisdiction where

they alleged an employment relationship between a foreign defendant and the plaintiffs);

*Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 156 (E.D.N.Y. 2014) (finding that individual

defendants were subject to specific personal jurisdiction based on actions taken in their corporate

capacities).  Crediting the allegations in the Amended Complaint as true, as I must, I find that

Plaintiffs meet the requirements of specific personal jurisdiction under New York law.  *See* N.Y.

C.P.L.R. § 302.

Moreover, I find that my exercise of jurisdiction in this case comports with due process

because it is foreseeable that employees from Sarar—a New York corporation with one of its

stores in New York—might bring an action against their employers, including the Individual

Defendants, in the Southern District of New York.  Thus, it is fair and reasonable to require the

Individual Defendants to defend themselves in New York.  *See Karabu Corp.*, 16 F. Supp. 2d at

323.  Plaintiffs therefore establish specific personal jurisdiction over Aksahin and Kurtyilmaz,

and Defendants' motion to dismiss the Amended Complaint against the Individual Defendants

under Rule 12(b)(2) is denied.[5]

### B.    *Insufficient Process*

Defendants' arguments that service was improper upon the Individual Defendants are

entirely premised on their arguments related to personal jurisdiction.  Because I find that

Plaintiffs establish a prima facie showing of personal jurisdiction, Defendants' arguments as to

process must fail.  This Court has jurisdiction over the Individual Defendants, and the Individual

Defendants were properly served under New York state law.  Accordingly, Defendants' motion

to dismiss the Amended Complaint under Rule 12(b)(5) is denied.

### C.    *Overtime Claims under the FLSA and NYLL*

#### 1.  Applicable Law

Section 207(a)(1) of the FLSA requires that an employee who works "in excess of" forty

hours shall be compensated for that excess work "at a rate not less than one and one-half times

the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  To state a FLSA overtime

claim, a plaintiff "must allege sufficient factual matter to state a plausible claim that they worked

compensable overtime in a workweek longer than 40 hours."  *Lundy v. Catholic Health Sys. of

Long Island Inc.*, 711 F.3d 106, 113–14 (2d Cir. 2013).  The overtime requirement under the

---

[5] Because I find that Plaintiffs' allegations constitute a prima facie showing of specific jurisdiction as to the
Individual Defendants, I need not consider Defendants' arguments as to general jurisdiction.

NYLL is identical to the requirement under the FLSA for the purposes of this motion. *See DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 n.5 (2d Cir. 2013).

The Second Circuit delineated the pleading parameters for FLSA overtime claims in a trio of cases from 2013. First, in *Lundy v. Catholic Health System of Long Island, Incorporated*, 711 F.3d 106 (2d Cir. 2013), the Second Circuit held that the plaintiffs failed to state a claim because they had "not alleged a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours." 711 F.3d at 114. Therefore, to state a FLSA overtime claim, "a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Id.*

Next, in *Nakahata v. New York–Presbyterian Healthcare System*, 723 F.3d 192 (2d Cir. 2013), the Second Circuit, relying on *Lundy*, similarly affirmed the dismissal of a FLSA overtime claim, where the plaintiffs had pleaded that they "regularly worked hours both under and in excess of forty per week and were not paid for all of those hours." 723 F.3d at 199. Specifically, the *Nakahata* plaintiffs alleged uncompensated work during meal breaks, required training sessions, and extra shift time, but did not "provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Id.* at 201. Accordingly, *Nakahata* added the requirement that a plaintiff must "plead sufficient facts to make it plausible that they worked uncompensated hours in excess of 40 in a given week." *Id.*

Finally, in *DeJesus v. HF Management Services*, 726 F.3d 85 (2d Cir. 2013), the Second Circuit again affirmed the dismissal of a FLSA overtime claim. In *DeJesus*, the plaintiff alleged that she worked "more than forty hours per week during 'some or all' weeks of her employment," and the court held that these allegations were insufficient to state a claim. 726

F.3d at 86. In so doing, the Second Circuit explained that the *DeJesus* pleading provided even "less factual specificity" than that of *Lundy* or *Nakahata*, and it did not "estimate [the plaintiff's] hours in any or all weeks or provide any other factual context or content." *Id.* at 89. Therefore, *DeJesus* warns that FLSA plaintiffs cannot simply rely on an "all-purpose pleading template alleging overtime in 'some or all workweeks,'" *id.* at 90, but instead must provide enough factual context to "'nudge' their claim 'from conceivable to plausible,'" *id.* (quoting *Twombly*, 550 U.S. at 570). This standard does not require "plaintiffs to keep careful records and plead their hours with mathematical precision," but it does require plaintiffs to rely on their "memory and experience that lead them to claim in federal court that they have been denied overtime in violation of the FLSA in the first place." *Id.*

## 2. Application

Defendants assert that Plaintiffs' FLSA and NYLL overtime claims must be dismissed for failure to state a claim. Specifically, they contend that Plaintiffs fail to plead their overtime claims with the requisite detail, relying primarily on *Lundy*, *Nakahata*, and *DeJesus* to support their argument. (Defs.' Mem. 9–13.)

Unlike the plaintiffs in *Lundy*, *Nakahata*, and *DeJesus*, Plaintiffs provide sufficient factual context in the Amended Complaint to state plausible overtime claims under the FLSA. Plaintiffs allege that Lewis, Werst, Bailey, and Capps were denied overtime compensation. (*See* Am. Compl. ¶¶ 53–79, 86–98.) Defendants are correct that certain of Plaintiffs' allegations with respect to Lewis and Werst viewed in isolation do not meet the pleading requirement set forth by the Second Circuit. (*See, e.g.*, *id.* ¶ 57 ("Consistent with Defendants' policy and pattern or practice, Plaintiff[s] Lewis [and] Werst regularly worked in excess of 40 hours per week without being paid overtime.").) However, other allegations in the Amended Complaint provide

further factual context for Plaintiffs' overtime claim. For example, Plaintiffs provide a detailed chart of Lewis's weekly shifts, (*id.* ¶ 59), which provides context for his claim that "he worked at least 45 hours per week to well over 50 hours per week without receiving overtime compensation, (*id.* ¶ 58). With respect to Werst, Plaintiffs assert that she "worked for 53.07 hours physically in the store plus another approximately five hours working from home for a total of 58.07 hours worked" in the week of February 8, 2016. (*Id.* ¶ 61.) These allegations, though somewhat meager, are sufficient to "make it plausible that they worked uncompensated hours in excess of 40 in a given week," *Nakahata*, 723 F.3d at 201, and appear to rely on Lewis and Werst's "memory and experience" of their denials of overtime compensation, *DeJesus*, 726 F.3d at 90.

Defendants fail to raise any specific argument as to Bailey and Capp's FLSA overtime claims; therefore, they have effectively conceded that the overtime allegations in the Amended Complaint with regard to Bailey and Capps are sufficient to state a claim. In any event, I find that Plaintiffs provide sufficient factual context for those claims as well. For example, Plaintiffs allege that Bailey was "scheduled to work five days per week, typically from Tuesday through Saturday, but his standard schedule was 9:00 am through 7:00 pm for a total of 10 hours per day, five days per week." (Am. Compl. ¶ 88.) To corroborate this allegation, Plaintiffs allege that Bailey sent an email to Aksahin in the beginning of 2015, requesting to be paid overtime and notifying him that he was working through lunch. (*Id.* ¶ 90.) With respect to Capps, Plaintiffs allege that her "standard workweek was from 10:00 a.m. to 6:00 p.m., however, she routinely was required to work late, typically at least once or twice a week to 8:00 pm. or 9:00 p.m." (*Id.* ¶ 88.) Plaintiffs thus estimate Bailey and Capps's hours with adequate specificity, rather than simply relying on an "all-purpose pleading template." *See DeJesus*, 726 F.3d at 90.

Plaintiffs have adequately pleaded their FLSA claims, and therefore Plaintiffs' NYLL

claims survive as well. *See id.* at 89 n.5. Accordingly, Defendants' motion to dismiss Plaintiffs'

overtime claims under the FLSA and NYLL is denied.

### D. *Gap-Time Claims under the NYLL*

#### 1. Applicable Law

"Claims for gap-time compensation are cognizable under the NYLL but not under the

FLSA." *Cromwell v. N.Y.C. Health & Hosps. Corp.*, 983 F. Supp. 2d 269, 271 (S.D.N.Y. 2013);

*see also Lundy*, 711 F.3d at 116 ("[W]e now hold that [the] FLSA does not provide for a gap-

time claim even when an employee has worked overtime."). Under the NYLL, "[i]f any

employee is paid by his or her employer less than the wage to which he or she is entitled . . . , he

or she shall recover in a civil action the amount of any such underpayments." N.Y. Lab. Law

§ 663(1). Unlike an overtime claim, "a gap-time claim requires no predicate showing of

minimum hours worked; rather, an allegation of hours worked without compensation may give

rise to a gap-time claim." *Nakahata*, 723 F.3d at 202.

#### 2. Application

As a preliminary matter, Plaintiffs assert gap-time claims only under the NYLL—not the

FLSA. (Am. Compl. ¶¶ 179–87; *see also* Pls.' Opp. 7–8.)[6] I therefore do not address

Defendants' arguments as to dismissal under the FLSA. With respect to Plaintiffs' gap-time

claims under the NYLL, Defendants argue that Plaintiffs fail to meet the pleading standard under

*Twombly* and *Iqbal*. (Defs.' Mem. 17–19.)

Here again, although Plaintiffs' allegations border on threadbare, they are sufficient to

---

[6] "Pls.' Opp." refers to Plaintiffs' Memorandum of Law in Opposition to Defendants' Second Partial Motion to Dismiss and in Support of Equitable Tolling of the Statute of Limtiations [*sic*] for the Putative Collectives. (Doc. 47.)

state gap-time claims under the NYLL. Plaintiffs support their gap-time claims by alleging (1) an arbitrary reduction in employee hours, (Am. Compl. ¶¶ 99–104), and (2) lunch breaks that were interrupted or non-existent, (*id.* ¶¶ 52, 82, 105). While these allegations on their own may lack the requisite specificity under *Twombly* and *Iqbal*, Plaintiffs also allege that Sachet Sanabria, Defendants' former Human Resources Manager, personally observed Defendant Aksahin arbitrarily write off time on a regular basis if employees' hours exceeded 40 hours in a workweek. (*Id.* ¶¶ 102 ("Sanabria observed Defendant Aksahin regularly reviewing the submitted time records from the non-exempt employees and then writing off the employees' hours if they worked over forty hours in a work week."), 105 ("[Sanabria] recalls that even when individuals informed Defendant Aksahin that they had worked through their lunch, Defendants would still deduct the thirty minutes from their time cards.").) Additionally, Plaintiffs allege that Silas, an opt-in plaintiff, worked forty-three hours, but was not paid for overtime as a result of Defendants writing off his time. (*Id.* ¶¶ 103–04.) Plaintiffs' general allegations are therefore corroborated by specific allegations involving Sanabria and Silas. Therefore, I find that Plaintiffs have asserted facially plausible gap-time claims under the NYLL.

Defendants' reliance on *Gregory v. Stewart's Shops Corporation*, No. 7:14-cv-00033, 2015 WL 893058 (N.D.N.Y. Mar. 2, 2015), is unavailing. In that case, the plaintiffs asserted claims for "general, sporadic events such as when 'employees' worked during breaks," which were "general and conclusory as to times, frequency, and individuals involved." *Id.* at *5. The Amended Complaint not only alleges that Defendants routinely—in fact, always—auto-deducted lunch breaks from Plaintiffs, but also alleges that Sanabria personally observed Defendant Aksahin arbitrarily write off time and fail to give employees credit for time they worked during lunch. These corroborating allegations "allow[] the court to draw the reasonable inference that

[Defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Accordingly, Defendants' motion to dismiss as to Plaintiffs' gap-time claims is denied.

### E.    *Equal Pay Act*

#### 1.  Applicable Law

The Equal Pay Act prohibits an employer from "paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). The Equal Pay Act, unlike Title VII, does not require a showing of discriminatory intent. *See Lavin–McEleney v. Marist Coll.*, 239 F.3d 476, 483 (2d Cir. 2001). It does, however, require a showing of "discrimination on the basis of sex." *Mudholkar v. Univ. of Rochester*, 261 F. App'x 320, 323 (2d Cir. 2008) (summary order). To state a claim under the Equal Pay Act, a "plaintiff must allege the following: (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions." *Klein v. N.Y. Univ.*, No. 07 Civ. 160(RLC), 2008 WL 3843514, at *3 (S.D.N.Y. Aug. 14, 2008); *see also Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 452 (S.D.N.Y. 2014) (dismissing wage claim under the Equal Pay Act where plaintiff failed to alleged "any facts showing that she was paid 'at a rate less than the rate at which Defendants paid wages to employees of the opposite sex'" (quoting 29 U.S.C. § 206(d)(1))).

#### 2.  Application

Defendants argue that Plaintiffs' allegations concerning Werst's Equal Pay Act claim are conclusory and merely track the language of the Equal Pay Act. (Defs.' Mem. 19–20.)

Specifically, Defendants contend that Plaintiffs fail to allege how Werst's position was similar to that of her comparators. (Defs.' Reply. 7.) I agree.

Plaintiffs allege that Werst received a reduced remuneration vis-à-vis similarly situated male employees due to Sarar and Aksahin's discriminatory animus toward women. (Am. Compl. ¶ 213.) The Amended Complaint identifies three such similarly situated male employees and includes their names and work locations. (*Id.* ¶ 214.) These similarly situated male employees "earned a higher salary than Plaintiff Werst's salary of $44,990.50," (*id.* ¶ 215), and their "total gross earnings from Defendants, inclusive of commissions, exceeded the total gross earnings received by Plaintiff Werst," (*id.* ¶¶ 215–16.) Even assuming that these passing references are sufficient to plead a different wage than that of Werst's male comparators, Plaintiffs fail to set forth any facts to show how Werst was similarly situated to her male comparators. *See, e.g.*, *Eng v. City of New York*, No. 15 Civ. 1282 (DAB), 2017 WL 1287569, at *4 (S.D.N.Y. Mar. 29, 2017) ("Plaintiff provides no factual allegations that would allow the Court to compare her job duties, skills and experience with those of the comparators."), *aff'd*, No. 17-1308, 2017 WL 5438877 (2d Cir. Nov. 14, 2017); *Von Maack v. Wyckoff Heights Med. Ctr.*, No. 15 Civ. 3951 ER, 2016 WL 3509338, at *11 (S.D.N.Y. June 21, 2016) (noting that plaintiff's Equal Pay Act claim would fail on the merits because the complaint was "devoid of any allegations going to whether [plaintiff and her comparator] performed a 'substantially similar' job"). Plaintiffs solely state that "[t]he work performed by Werst was equal to the work performed by the Similarly Situated Males, and such work required equal skill, effort, and responsibility to perform same." (Am. Compl. ¶ 217.) There are no allegations in the Amended Complaint, for example, that Werst was employed in a similar position as her male comparators or that Werst was of a comparable experience and skill level. Instead, Plaintiffs' allegations are

a formulaic recitation of the language of the Equal Pay Act. *See* 29 U.S.C. § 206(d)(1) (stating that employers must "pay[] wages to employees of the opposite sex . . . for equal work on jobs the performance of which *requires equal skill, effort, and responsibility*" (emphasis added)). Therefore, I find that Plaintiffs fail to provide any factual context to nudge Werst's Equal Pay Act claim from conceivable to plausible under the standards articulated in *Twombly* and *Iqbal.*

Accordingly, Defendants' motion to dismiss Werst's Equal Pay Act claim is granted, and that claim is dismissed.

### F. *Equitable Tolling*

The FLSA provides a two-year statute of limitations, with an additional one-year extension for willful violations. 29 U.S.C. § 255(a). In a FLSA collective action, such as here, the statute of limitations runs for each plaintiff until he or she files written consent with the court to join the suit. *Id.* § 256(b). Consequently, unlike the statute of limitations in a Rule 23 class action, which is tolled for all putative class members upon the filing of the complaint, "the limitations periods in a FLSA action continues to run until an individual affirmatively opts into the action." *Yahraes v. Rest. Assocs. Events Corp.*, No. 10-CV-935(SLT), 2011 WL 844963, at *1 (E.D.N.Y. Mar. 8, 2011). Furthermore, "[s]igned consents do not relate back to the original filing date of the complaint." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 199 (S.D.N.Y. 2006). However, in certain limited circumstances, the court has discretion to equitably toll the limitations period.

Equitable tolling may be appropriate where a defendant's conduct "concealed from the plaintiff the existence of the cause of action." *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985). "Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence

which could reasonably be expected in the circumstances." *Veltri v. Bldg. Serv. 32B–J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004). In the context of a FLSA action, "failure to post the required notice equitably tolls the statute of limitations unless and until an employee has actual notice of his [or her] rights." *Baba v. Grand Cent. P'ship, Inc.*, No. 99 CIV. 5818(TPG), 2000 WL 1808971, at *2 (S.D.N.Y. Dec. 8, 2000). However, courts in the Second Circuit have declined to rule on equitable tolling at the motion to dismiss stage. *See, e.g.*, *Zhou v. Wu*, No. 14-cv-1775 (RJS), 2015 WL 925962, at *4 (S.D.N.Y. Mar. 3, 2015) ("The Court finds that this question of equitable tolling is a highly factual issue that cannot be resolved on the pleadings at this stage of the proceedings."); *Upadhyay v. Sethi*, 848 F. Supp. 2d 439, 445 (S.D.N.Y. 2012) ("The resolution of [an equitable tolling] issue is thus heavily dependent on the facts of the case and cannot be decided on a motion to dismiss.").

Here, Plaintiffs argue that Defendants have "engaged in procedural gamesmanship by filing a motion dismiss." (Pls.' Opp. 14.) Plaintiffs have not, however, identified any unusual procedural history or discovery logjam that has contributed to a delay in prosecuting this action. Indeed, I previously denied Defendants' motion to enjoin Plaintiffs' counsel from communicating with potential opt-in plaintiffs, and a number of Defendants' employees have joined the action since the filing of this action. (Doc. 25.) There has been no cognizable impediment to Plaintiffs' ability to reach out to potential opt-ins during the pendency of this motion, nor have Plaintiffs demonstrated any delay in proceeding with discovery. *See Barrett v. Forest Labs., Inc.*, No. 12-CV-5224 (RA), 2015 WL 4111827, at *3 (S.D.N.Y. July 8, 2015) ("[W]hile there have no doubt been delays in briefing and deciding Defendants' motion to dismiss, Plaintiffs have failed to explain how these delays erected any barrier to their seeking the discovery necessary to pursue conditional certification.").

Plaintiffs also contend that Defendants' conduct in this case concealed from Plaintiffs the existence of a cause of action. They allege that Defendants failed to post any wage and hour notices advising Plaintiffs (and Defendants' other employees) of their right to earn minimum wage and overtime compensation. (Am. Compl. ¶¶ 30, 33, 36, 39.) This issue may bear fruit for Plaintiffs down the road, but is heavily dependent on the facts and cannot be decided on a motion to dismiss.[7] *See Upadhyay*, 848 F. Supp. 2d at 445. Accordingly, Plaintiffs' request to toll the statute of limitations for the putative collectives is denied without prejudice to renew.

## V.    <u>Conclusion</u>

For the foregoing reasons, Defendants' partial motion to dismiss is GRANTED IN PART and DENIED IN PART. Defendants' motion is granted as to Werst's Equal Pay Act claim, and Claim VI of the Amended Complaint is dismissed. The remainder of Defendants' motion is denied. Additionally, Plaintiffs' request to toll the statute of limitations for the putative collectives is denied without prejudice to renew.

The parties are directed to meet and confer regarding the scheduling of discovery and submit a proposed Case Management Plan and Scheduling Order on or before April 6, 2018. The Clerk of Court is respectfully directed to terminate the pending motion at Document 44.

SO ORDERED.

Dated:  March 16, 2018
         New York, New York

Vernon S. Broderick
United States District Judge

---

[7] I note that Plaintiffs have not yet filed for conditional class certification, which further indicates that deciding equitable tolling would be inappropriate at this stage. *See Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 355 (S.D.N.Y. 2017) (noting that some courts have held that, in FLSA collective actions, "the potential opt-in plaintiffs' claims may be tolled during the period the court takes to decide the conditional certification motion").